FILED

2005 Nov-07  PM 03:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN  DIVISION

FEDERATED LIFE INSURANCE          ]
COMPANY,                          ]
                                  ]
    **Plaintiff(s),**          ]
                                  ]
v.                                ]          **Case No.: CV 04-2904-VEH**
                                  ]
BONNIE HALL, et al.,              ]
                                  ]
    **Defendant(s).**          ]


## MEMORANDUM OPINION

## I. **Pending Matters**

Plaintiff Federated Life Insurance Company ("Federated") and Defendant Margaret Hurst ("Hurst") have filed Motions for Summary Judgment as to all claims. ((Doc. 37, superseded by 53, (Hurst), and Doc. 54 (Federated)).  Those motions have been opposed by Bonnie Hall ("Mrs. Hall")[1]; Sylacauga Machine Manufacturing, Inc. ("Sylacauga Machine"); Virginia Paris ("Paris"), and Heidi Edwards ("Edwards"). (Docs. 55 and 62)  Hurst filed a reply to the oppositions.  (Doc. 58)  All parties save Mrs. Hall have filed evidentiary submissions in support of their claims and legal

---

[1] Mrs. Hall has adopted the response and opposition filed by Sylacauga Machine, Paris, and Edwards.  Docs. 56 and 64.

arguments, docs. 43, 57, and 62; Mrs. Hall has adopted the submissions of Sylacauga Machine, Paris, and Edwards.

The parties' motions and supporting pleadings, as well as prior motions for injunctive relief and evidentiary hearings, raise two issues:

1)   Ownership and beneficiar(y)(ies) of $100,000.00 life insurance

2)   Whether stock buy-sell/option agreements executed by Paris and Edwards are enforceable

## II. **Jurisdiction and Venue**

This is a diversity action interpleader and declaratory judgment action filed by Federated against Hurst, Mrs. Hall, Sylacauga Machine, Paris, and Edwards. Federated is a foreign corporation with its principal place of business in Minnesota. Federated sells insurance coverage, including life insurance, in Alabama and other states.

The Defendants are all Alabama citizens. Sylacauga Machine in an Alabama corporation with its principal place of business in Talladega County, Alabama. Mrs. Hall, Hurst, Paris, and Edwards are all Alabama residents of Talladega County, Alabama.

The court has original jurisdiction over the action based on diversity of citizenship, 28 U.S.C. § 1332. Federated sought judgment over the disposition of

One Hundred Fifty Thousand Dollars ($150,000.00) in life insurance policy proceeds at the time it filed the Complaint, satisfying the jurisdictional amount.

### III.  **The Nature of the Action**

Federated, pursuant to F.R.Civ.P. 22 and 28 U.S.C. § 2001(a), interpled the $150,000.00 life insurance proceeds described above, and seeks a declaration of the correct beneficiaries under the policies.  All the insurance proceeds involved in this action insured the life of Robert Hall ("Mr. Hall"), deceased.  Unless the context clearly indicates otherwise, Mr. Hall was the majority shareholder, president and board chairman of Sylacauga Machine.  Mrs. Hall is Mr. Hall's widow; Paris and Edwards are his adult daughters.  At the time of Mr. Hall's death, Hurst was a stockholder, employee and board member of Sylacauga Machine.

By Order filed March 10, 2005, doc. 34, the court, treating the stipulation made by the parties in open court at a March 8, 2005, hearing as a motion for partial summary judgment and disbursement of funds, entered judgment in favor of Mrs. Hall for Fifty Thousand Dollars ($50,000.00), plus accrued interest, in Federated policy proceeds.  There are competing claims for the remaining  $100,000.00 policy proceeds: Federated and Hurst say the correct beneficiary is Sylacauga Machine; Mrs.

3

Hall, Paris, and Edwards say the correct beneficiary is Mrs. Hall[2].  Hurst also seeks

injunctive relief with respect to the stock and control of Sylacauga Machines.  This

Opinion addresses those claims.

The court is familiar with the parties and the factual background.  Previous

Orders have been entered on motions for temporary restraining order and preliminary

injunction, docs. 25 and 39; hearings have been held on December 3, 2004 and

March 2, 8, and 14, 2005.  Hurst, Mrs. Hall, Paris, and Edwards testified during the

March hearings.

### IV.  **Standard of Review for Summary Judgment**

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that

the moving party is entitled to judgment as a matter of law."  See *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023

(11th Cir. 2000).  The party asking for summary judgment always bears the initial

responsibility of informing the court of the basis for its motion, and identifying those

---

[2]  Sylacuaga's opinion has depended on who spoke for it.  At the beginning of the action, when Hurst was controlling the representation, Sylacauga Machine claimed entitlement to the proceeds.  When representation shifted to the attorney representing Mrs. Hall, Paris, and Edwards, Sylacauga Machine claimed the proceeds of policy 143003 belong to Mrs. Hall.  The conflict for an attorney in representing both the company and a claimant is obvious, and the company should have had, but did not have, independent representation.

portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and, by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.

The substantive law will identify which facts are material and which are irrelevant. *Chapman*, 229 F.3d at 1023; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Chapman*, 229 F.3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248; *Chapman*, 229 F.3d at 1023. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. See *Fitzpatrick*, 2 F.3d at 1115-17 (citing *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991)(*en banc*)). If the moving party bears the

burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. *Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of any evidence in the record in support of a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the court that there is an absence of evidence to support the non-moving

party's case. *Fitzpatrick*, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the non-moving party may either point to evidence in the court record, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

## V. **Mr. Hall's Federated Life Insurance**

The background of Mr. Hall's life insurance policies is this:

1.     Mr. Hall was the president and majority stockholder of Sylacauga Machine.

2.     Federated provided insurance for Sylacauga Machine and, through it, life insurance for Mr. Hall.

3.     Hurst was a long time employee, officer, and stockholder of Sylacauga Machine.

4.      Mrs. Hall is the widow of Mr. Hall. Virginia Paris and Heidi Edwards are the adult daughters of Mr. and Mrs. Hall.

5.    On or about February 15, 1995, Federated issued policy number 143003, a term life insurance policy insuring Mr. Hall, with a face value of $150,000.00. The policy was owned by Sylacauga Machine, the beneficiaries were Mrs. Hall, Virginia Paris and Heidi Edwards, then Heidi Hall. The Federated policy was a term policy that replaced an expired term policy issued by Zurich Insurance,

6.    A month later, on or about March 16, 1995 the beneficiary of policy 143003 was changed: Hurst became the sole beneficiary.

7.    Five months after its issuance, on or about July 10, 1995, ownership of policy 143003 was changed from Sylacauga Machine to Hurst, leaving Hurst as both the owner and beneficiary of the policy.

8.    Seven (7) years passed. On or about August 9, 2002, the beneficiary of policy 143003 was changed from Hurst to Sylacauga Machine. Hurst remained the owner of the policy.

9.    Six (6) months later, on or about February 14, 2003, policy 143003 was split into two (2) separate polices, which was permitted under its terms. After the split, 143003 continued in effect with a reduced death benefit of $100,000.00, and Federated issued a new policy, number 200061, with a death benefit of $50,000.00.[3]

---

[3] Policy 200061 represents the money paid out to Mrs. Hall by stipulation and subsequent Order. (Doc. 34)

Both policies, like the pre-split 143003, insured Mr. Hall's life.  Discussed at VII, below are the issues of ownership and beneficiary of 143003 after the split that created policy 200062.

10.   Hall died on August 30, 2004.

11.   Hurst claims that the proceeds from insurance policy 143003 are, and were always, intended to fund a stock buy-out that would leave her the sole shareholder of Sylacauga Machine.[4]

12.   Mrs. Hall claims she is entitled to all of the life insurance proceeds.

13.   Paris and Edwards claim they are not required to sell their shares to Sylacauga Machines.  Thus, Mr. Hall's family members would end up with both the insurance proceeds and majority ownership of Sylacauga Machine.

## VI.  **The Undisputed Facts**

The following facts are not disputed, or, if they are, the dispute concerns their legal significance, not their existence.

Beginning in 1984, Mr. Hall and Hurst were the only shareholders of Sylacauga Machine; Mr. Hall owned 51 shares, Hurst 25 shares.  Sylacauga Machine owned 24 shares.  Hurst Affidavit, page 1.

---

[4] Under the facts in this case.  Hurst's position is that, had she died first, the term portions of the policy insuring her life, 143004, would have been used to fund the purchase of her stock.  Like 143003, 143004 was also "split" in February of 2003, leaving the original term policy with a reduced benefit and creating a new policy in an amount equal to the reduction in the original death benefit.

Mr. Hall and Hurst entered into Buy-Sell agreements, funded by insurance policies on his and her lives that, upon the death of either, would fund the purchase, by Sylacauga Machine, of the decedent's stock, leaving the survivor as the sole stockholder of Sylacauga Machine.  Hurst Affidavit, page 1.

Two ten (10) year term life insurance policies were purchased in 1984, one for $100,000 on Mr. Hall's life, the second for $100,000 on Hurst's life.  The policies were issued by Zurich Life Insurance Company.  Hurst Affidavit, page 2.

The Zurich policies were replaced by Federated policies 143003 and 143004.  Policy 143003 insured Mr. Hall's life for $150,000, 143004 insured Hurst's life for $50,000.00.  Hurst Affidavit, page 2.

The "Purpose of Insurance" set forth in the application materials for the Federated policy 143003 was "Business: Buy-Sell Cross Purchase".  Federated Exhibit D, at 00010.

At the time policy 143003 was issued, Mr. Hall and Hurst told Federated Marketing Representative Mike Hardy of their intention to use the proceeds of policy 143003 to fund a cross purchase buy-sell agreement under which Hurst would, at Mr. Hall's death, become the sole owner of Sylacauga Machine.  Hardy Deposition, page

13, Federated Exhibit E.[5]

The original owner of 143003 was Sylacauga Machine, the original beneficiaries were Mrs. Hall, Paris, and Edwards.  Federated Exhibit D, at 00010.  Six (6) weeks after issuance, the beneficiary was changed to "Margaret Hurst, Business Partner".  Deposition of Mike Hardy, Federated Exhibit E, p.9.

In May of 2002, Mr. Hall told Hurst he wanted to transfer his stock to his daughters because he was trying to qualify for Social Security.  Mr. Hall assured Hurst he understood her concerns about the transfer of his stock and said he would transfer his shares to his daughters with the understanding that they too would execute similar [buy-sell] "protective" Agreements.[6]  Hurst Affidavit page 3.

_____

[5] While policy 143004 is not involved in this action, the court notes that the exact same representations were made to Hardy, i.e., that 143004 was intended to fund the purchase of Hurst's shares at her death, leaving Mr. Hall as the sole owner of Sylacauga Machine.  Hardy Deposition at p. 9, Federated Exhibit E.

[6] Sylacauga Machine objects to pages 9 & 13 as hearsay, *Macuba v. Deboer*, 193 F.3d 1316, 1322 - 1324 (11th Cir. 1999).  Because of the court's construction of the February 14, 2003, Policy Service (L-69) form executed by Hurst, i.e, that Hurst did not transfer ownership of 143003 to Hall, only the new ("split")\$50,000 portion thereof, and therefore Mr. Hall could not, and did not, change the beneficiary on the \$100,000 remaining in 1430003, this objection need not be reached.  Even without the court's ruling on the February, 2003 policy change)s), the decision herein rests solidly on the written Agreements executed by Mr. Hall, Hurst, Paris, and Edwards.  Having said that, the court holds that they are admissible.  The statements explain Hardy's actions, particularly his February, 2003, writing to Federated setting out the effect of the "splitting" of policy 143003. Considered for that reason, the statements are not hearsay by definition, since they are not offered for the truth thereof.  As hearsay, the statements would also be admissible under F.R.Evid.803(3) as describing Mr. Hall's (and Hurst's) intent, plan, and design, here the use of the life insurance to fund a stock buyout set up by a cross-purchase agreement.

Accepting for discussion Sylacauga Machine's assertion of events, then Mr. Hall's statements would subject him at the time, now his Estate, to claims by Hurst and perhaps Sylacauga Machine, and therefore are admissible as statements against interest under  F.R.Evid. 804(b)(3).  Under that version of events, Mrs. Hall would receive the \$100,000.00 from Federated policy 143003, and Paris and Edwards

11

On August 9, 2002, Mr. Hall, Hurst, Paris, and Edwards, saying they had done so on May 10, 2002, but were executing the document on August 9, 2002, executed an Agreement that provided, *inter alia,* that upon Mr. Hall's death, Sylacauga Machine ". . . shall purchase all of the stock in Sylacauga Machine Manufacturing, Inc., owned by Virginia H. Paris and Heidi Edwards. . .".  Sylacauga Machine Exhibit 9, Federated Exhibit J, pp. 116 -118.

Also on May 10, 2002, at a special meeting of Sylacauga Machine directors and shareholders, Mr. Hall, in response to concerns expressed by Hurst over " . . .the protection agreement in place relevant to the stockholders of the corporation and the corporation itself . . .", stated that his sale of his stock to Paris and Edwards would be with the understanding that they would execute similar protective agreements as he, Mr. Hall, had executed in order to protect the corporation and each of the shareholders' interests.  *Id.*[7]

In a Policy Change and Service Request dated February 14, 2003, 143003 was

_____

would remain shareholders while Hurst would no longer be a shareholder or employee.  Hurst's remedy would be a fraud action against Mr. Hall's Estate, joined perhaps with claims against Federated, Hardy, Paris, and Edwards.  The basis for her claims, *inter alia*, would be that she remained the owner of 143003 until Hall's death, and her executing any documents allowing Hall, or anyone else, to change the beneficiary of 143003 was induced by fraud.  Under this scenario, the court would order Mr. Hall's Estate joined as a F.R.Civ.P. 19(a) indispensable party.  Not doing so would leave the dispute resolved except for this claim, working a waste of judicial resources and a result at odds with F.R.Civ.P. 1.

[7] At that time, the only shareholders who had interests to protect were Mr. Hall and Hurst, and the agreements Mr. Hall (and Hurst) had previously signed were buy-sell agreements where Sylacauga Machine would purchase his or her stock at death, leaving the survivor as the sole shareholder.

converted, with $50,000 of the original $150,000 proceeds converted to a separate Current Life IV ten (10) year term policy numbered 20061.  Federated Exhibit K, pp. 85 - 86.

The signature page signed by Hurst on the February 14, 2003 Federated Policy Change and Service Request (L-69) has a hand written reference saying the change made (which was to ownership, as indicated in the checked box on page 1) related to the ownership of **"new Term Convers CL IV"** (sic).  Federated Exhibit L, p. 88. (Emphasis supplied)  "[N]ew terms Convers CL IV" are the words appearing on page 2 immediately before Hurst's signature  The first page has filled in by hand, in the blank after "POLICY NUMBER" "143003/New Policy" with "CL IV" hand-written immediately below, "Term Conversion" hand-written immediately above it (there isn't space on the line for the words above and below), and "#200061 written at the top above the quoted language.

Mr. Hall signed, also on February 13, 2003, a Federated Policy Change and Service Request (L-69) form changing the beneficiary on policy #20061 to Mrs. Hall, with Paris and Edwards as contingent beneficiaries. Federated Exhibit K, pp. 85 - 86.

Six (6) days later, on February 19, 2003, Mike Hardy, now a Federated Senior Marketing Representative, wrote Federated Life Administration about the "splitting" of policies 143003 (insuring Mr. Hall's life) and 143004 (insuring Hurst' life).  In

13

that letter Hardy said "**We will continue the same ownership and beneficiary for the Term Policies and change the Current Life policies to be owned personally by each one with designated beneficiary changes**".  Hurst Exhibit 9; Federated Exhibit K, pp. 85 - 86 (emphasis supplied).  Federated policies 143003 and 143004 were term policies.  Hardy's letter also contained a hand-written notation that read:

**143003 -      Sylacauga Machine $100,000**

**20061 -      To Bonnie Hall**

Federated Exhibit R, p. 122.

Federated sent a confirmation notice to Hurst referencing only policy #=143003 saying Hurst had changed the ownership to a corporation.  Federated Bates numbered ("Federated") p. 83.

Federated's worksheet on the February, 2003 changes in policy 143003 shows $50,000.00 created as policy 200061 and $100,000.00 in term remaining in place. Federated p. 90.

The original purpose of policy 143003, to fund cross purchase buy-sell agreements, never changed prior to Mr. Hall's death, as communicated to Mike Hardy, the Federated representative with whom Mr. Hall and Hurst worked for over ten (10) years.  Hardy Deposition at pp. 13 - 14, Federated Exhibit D.

After Mr. Hall's death, there was confusion at Federated about the correct

14

beneficiary(ies) of policies 143003 and 200061, and competing claims to some or all of those policy proceeds, resulting in the filing of this action.

VII.  <u>**Analysis**</u>

**1)    Ownership and beneficiary of Federated Policy 143003
        ($100,000.00 life insurance on Mr. Hall)**

Sylacauga Machine, Paris, and Edwards assert that Hurst changed the ownership of policy 143003 **in its entirety**, giving Mr. Hall the right to change the beneficiary of all the proceeds to his wife and daughters.  The evidence they rely on consists of Affidavits of Paris and Edwards that do not rebut Hurst's or Federated contentions about the policy ownership and beneficiar(y)(ies) of143003,  Federated documents generated **after** Mr. Hall's death, alleged failures by Federated to follow internal procedures or to verify are the February, 2003, Federated Policy and Service Request, and the testimony of a Federated underwriting representative, Pamela A. Veencamp that is offered for the legal conclusion as to ownership and beneficiar(y)(ies) of 14003.

These contentions are irrelevant.  For Sylacauga Machine, Paris, and Edwards to maintain their claims, they must show a material factual dispute regarding the February, 14, 2003 policy change documents.  The key document in question is the

February 14, 2003 Federated Policy Change and Service Request (L-69) form.[8]   The

first page of the form has filled in by hand in the blank after "POLICY NUMBER"

"143003/New Policy" with "CL IV" hand-written immediately below, "Term

Conversion" hand-written immediately above it (there isn't space on the line for the

words above and below), and "#200061" written at the top of page 1. above the

quoted language.

Page 2., the page the policy owner (Hurst) signed, transferred to Mr. Hall the

ownership of **"new Term Convers CL IV"** (sic). (Emphasis supplied) These words,

"[N]ew terms Convers CLIV",are the words appearing on page 2 immediately before

Hurst's signature.   The court holds as a matter of contract construction that while

page 1 of the February 14, 2003 L-69 (Federated Exhibit L, p. 87) is arguably

ambiguous, the operative language  in the signature paragraph on page 2 (Federated

Exhibit L, p. 88) , set out here, is clear and unambiguous:

**I hereby direct Federated Life Insurance Company to change policy No.  *New Term Convers CL IV* on the life of *Robert D. Hall* as indicated in number(s) 1.**

**Owner declares that no bankruptcy proceedings are now pending against him/her by signing below:**

**Dated this *14th* day of *February, 2003* at *Sylacauga, AL***

   *Witness signature*               ***X  Margaret M. Hurst***

---

[8]  Federated Exhibit L, pp. 87 - 88.

16

**Witness**                                          **Policy Owner (Signature)**[9]

The signature paragraph is clear and unambiguous: Hurst transferred ownership of "*New Term Convers CL IV*" and **only** "*New Term Convers CL IV*".  Even if the handwritten notations of page 1 of Federated Exhibit L, p. 87 were confusing to Veencamp after Mr. Hall's death, there is nothing confusing about the signature paragraph on page 2 of that Exhibit and what it did or didn't do.  Thus there is no reason for testimony or evidence about the effect of the February 14, 2003 L-69 signed by Hurst, Exhibit L, pp. 87 -88.[10]  Hurst transferred to Mr. Hall ownership of the new converted ("*Convers*")CL IV or "split off" part of 143003, which was "new" policy 200061.  Mr. Hall subsequently changed the beneficiary of 200061 to his wife, Mrs. Hall, with his daughters as contingent beneficiaries.  Federated Exhibit K, pp. 85 - 86.  After a consent stipulation of all parties made in open court, the court previously ordered the 200061 policy proceeds distributed to Mrs. Hall.[11]

The testimony of Federated underwriting representative Pamela A. Veencamp, Sylacauga Machine, Paris, and Edwards "CD's Ex. 1", is similarly irrelevant in light

---

[9] The hand written material is *italicized.*

[10] And if there were confusion or ambiguity, opening the door for parol evidence, Hardy's February 19, letter to Federated, his email correspondence to Federated after Mr. Hall's death, and his deposition testimony all say the same thing: there was no change to the $100,000.00 remaining in 1432003, a(or the remaining $50,000.00 in 143004), and the proceeds were to be used by Sylacauga Machine for the stock buyout of Hall's (or Hurst's) stock.

[11] The court would order that same distribution as part of this Order had it not already taken place.

of the court's holding concerning the legal effect of the February 13, 2003 Form L-69 executed by Hurst.  The court notes that Veencamp had no personal knowledge of these events.  By contrast, Mike Hardy, the Federated representative with personal knowledge of the February 13, 2003 L-69 signed by Hurst, wrote Federated Life Administration six (6) days later, on February 19, 2003, about the "splitting" of policies 143003 (Mr. Hall's life) and 143004 (Hurst' life)[12] and said "[W]e will continue the same ownership and beneficiary for the Term Policies and  change the Current Life policies to be owned personally by each one with designated beneficiary changes".  Hurst Exhibit 9; Federated Exhibit R, p.122.  Federated policies 143003 and 143004 were term policies.  Hardy's letter also contained a hand-written notation that read:

**143003 –      Sylacauga Machine $100,000**

**20061 –       To Bonnie Hall**

Federated Exhibit R, p. 122.

Thus, the February 13, 2003 L-69 executed by Hurst, and the other admissible evidence, inescapably leads to one conclusion: Hurst retained ownership of policy 143003 through and after February 13, 2003, up to and including Mr. Hall's death,

---

[12]  As it had been throughout, the amount of insurance on Mr. Hall and Hurst' lives reflected, roughly, their respective percentage ownership of Sylacauga Machine stock, valuing the stock at $2,000.00 a share, the value used by them (and Paris and Edwards) in the various stock purchase or option agreements.

and Sylacauga Machine remained the beneficiary of the proceeds of policy 143003

until Mr. Hall's death.

### 2.     The Stock Buy-Sell Agreements

<u>Third Party Beneficiary Status Under Alabama law</u>

Earlier this year, In *Locke v. Ozark Bd. Of Ed.*, 910 So.2d 1247, 1250(Ala.

2005), the Alabama Supreme Court recounted the law governing the claiming of

contractual third party beneficiary status:

. . .   "[I]f one person makes a promise for the benefit of a **third party**, such
**beneficiary** may maintain an action thereon, though the consideration does not move
from the latter." *Franklin Fire Ins. Co. v. Howard,* 230 Ala. 666, 667-68, 162 So.
683, 684 (1935).

> " ' "To recover under a **third-party beneficiary** theory, the complainant
> must show:  1) that the **contracting** parties intended, at the time the
> **contract** was created, to bestow a direct benefit upon a **third party**;  2)
> that the complainant was the intended **beneficiary** of the **contract**;  and
> 3) that the **contract** was breached." ' "

*H.R.H. Metals, Inc. v. Miller,* 833 So.2d 18, 24 (Ala.2002)(quoting  *Sheetz,
Aiken & Aiken, Inc. v. Spann, Hall, Ritchie, Inc.,* 512 So.2d 99, 101-02 (Ala.1987)).
Further, " ' "[i]t has long been the rule in Alabama that one who seeks recovery as a
third-party beneficiary of a contract must establish that the contract was intended for
his direct, as opposed to incidental, benefit." ' "  *Morris Concrete, Inc. v. Warrick,*
868 So.2d 429, 434 (Ala.Civ.App.2003)(quoting *McGowan v. Chrysler Corp.,* 631
So.2d 842, 848 (Ala.1993)(quoting in turn *Mills v. Welk,* 470 So.2d 1226, 1228
(Ala.1985))).  "[W]e look[] to the complaints and the surrounding circumstances of
the parties to ascertain the existence of that direct benefit." *Holley v. St. Paul Fire &
Marine Ins. Co.,* 396 So.2d 75, 80 (Ala.1981)(citing *Zeigler v. Blount Bros. Constr.
Co.,* 364 So.2d 1163 (Ala.1978)); *see also Anderson v. Howard Hall Co.,* 278 Ala.
491, 179 So.2d 71 (1965).

3.     **The Paris and Edwards Buy-Sell Agreements**[13]

It is undisputed that, when Mr. Hall transferred his stock to his daughters, Paris and Edwards, Paris and Edwards acquired the stock subject to agreements that, *inter alia*, obligated Sylacauga Machine to buy, and them to sell, their stock in the event of Mr. Hall's death.  Paris and Edwards do not dispute execution of these agreements, rather they argue that, after Mr. Hall's death, they, acting individually and as agents of Sylacauga Machine, cancelled the stock purchase agreement.  They further argue that Hurst, not being a party to the Paris/Edwards/Sylacauga Machine stock purchase agreements, cannot enforce them.

As previously set out, the undisputed facts are that Mr. Hall had agreed, starting in 1984, to sell his stock to either Hurst or Sylacauga Machine in the event of his death, that Hurst had agreed to sell her stock to either Mr. Hall or Sylacauga Machine in the event of her death, that the purpose and effect of the agreements would be to leave the survivor as the sole shareholder of Sylacauga Machine, and that insurance was purchased, first through Zurich and then Federated, to provide the funding to carry out the agreement(s).

Applying in this case, as the Alabama Supreme Court did in *Locke*, the

---

[13] The analysis, and result, would be unchanged if the stock involved were, or should turn out to be, Mr. Hall's.

"surrounding circumstances" test, the court holds that Hurst was, at all relevant times, an intended third party beneficiary of agreements where Sylacauga Machine would purchase stock as a result of Mr. Hall's death. This includes Mr. Hall's stock while he owned it and after he transferred it to Paris and Edwards. The evidence before the court leads to no other reasonable conclusion, and the arguments made to the contrary by Sylacauga Machine, Paris, and Edwards border on the ludicrous.

And, because Sylacauga Machine's duty to buy, and the duty of Paris and Edwards to sell, the stock vested at Mr. Hall's death, any action taken by Paris and Edwards other than tendering the stock, was and is of no legal consequence. This would include the "cancellation" of their agreement to sell their stock, the "for cause" termination of Hurst, and any other actions taken by them using their (combined majority) stock ownership.

## VIII.   **The Sylacauga Machine Putative "ERISA" Claim**

After the time to amend pleadings had expired, new counsel for Sylacauga Machine (who also represents Paris and Edwards) filed a Motion to Amend/Correct the Sylacauga Machine pleadings (Doc. 41). The Motion was denied as untimely and also because the Motion to Amend/Correct failed to provide proposed amended pleadings, thereby preventing an evaluation of the magnitude or significance of the intended amendment. (Doc. 45)

21

Sylacauga Machine then filed a Motion to Reconsider the denial Order.  (Doc. 47).  The Motion to Reconsider attached a proposed Amended Answer, Counterclaim, and Crossclaim.  (Doc. 47)   The gist of the pleading is that the Federated life insurance involved in this case is part of an ERISA plan.  Federated is identified as the Plan Administrator, Sylacauga Machine as the employer, the Plan, named for the first time in the exhibit to doc. 47, is the "Sylacauga Machine ERISA Benefit Plan".

If Sylacauga Machine is correct, then, as Sylacauga Machine's proposed pleading points out, Federated (the Plan Administrator) has failed, since the policies were issued in 1995, to follow any of ERISA's requirements.  Federated has failed to qualify the Plan, failed to distribute Summary Annual reports to plan participants, failed to file Form 5500-C each year, failed to obtain tax benefits for Sylacauga Machine for funding the Plan (paying the premiums), and on and on.  Federated would be subject to damages and penalties.  Perhaps of more relevance, Sylacauga Machine could not be the beneficiary of any life insurance proceeds because doing so would violate the anti-inurement provisions of ERISA, 29 U.S.C. § 1103(c)(1), and the prohibition of stock transactions between a Plan and a "party in interest" (Sylacauga Machine), 29 U.S.C. § 1106(a)(1)(A).

Assuming only for purposes of discussion and appellate review that these claims should have been before the court when it ruled on the summary judgment

motions, the court will discuss Sylacauga Machine's allegations that the Federated

life insurance on Mr. Hall was an ERISA plan.

Sylacauga Machine's ERISA claims are ironic, if for no other reason than that

its arguments demonstrate the non-establishment of an ERISA plan insofar as the

Federated policies are concerned.  An employer must have some involvement in the

establishment of an ERISA plan and, while no single act by the employer is in itself

determinative, seven (7) factors may be relevant in determining whether an ERISA

plan has been established:

(1)  the employer's representations in internally distributed documents;

(2)  the employer's oral representations;

(3)  the employer's establishment of a fund to pay benefits;

(4)  actual payment of benefits;

(5)  the employer's deliberate failure to correct known perceptions of a plan's existence;

(6)  the reasonable understanding of employees; and

(7) the employer's intent.

*Anderson v. UnumProvident Corp*., 369 F.3d 1257 (11th Cir. 2004), *quoting Butero*

*v. Royal Maccabees Life Ins. Co*., 174 F.3d 1207, 1215 (11th Cir. 1999).  The

Amended  Complaint  sought  to  be  filed  nowhere  alleges  Sylacauga  Machine

represented, in distributed documents or oral representations, that the Federated policy insuring Mr. Hall's life was an employee welfare benefits plan; it is not alleged that Sylacauga Machine created a fund to pay the premiums on Mr. Hall's Federated insurance; it is not alleged that Sylacauga Machine failed to correct know perceptions of a plan's existence; there is no allegation that Sylacauga Machine's employees reasonably understood the Federated insurance in this action was part of an ERISA plan; and there is no evidence that Sylacauga Machine intended to create such a plan.[14]   In essence, the allegations seek to create a plan after Hall's death, and, assuming Hall and the other owners of the policy intended the proceeds to go to Sylacauga Machine,  frustrate that intention.

Also, a plan falls within the ambit of ERISA only if it "covers ERISA participants because of their employee status in an employment relationship. . . Thus, in order to establish an ERISA employee welfare benefit plan, the plan must provide benefits to at least one employee, not including an employee whois also the owner of the business in question".  *Slamen v. Paul Revere Life Ins. Co*., 166 F.3d 1102, 1104 (11th Cir. 1999).  The pleading (Amended Counterclaim, ¶ 1) alleges the existence of

---

[14] Which is not surprising, since the gist of the allegations is that  there has been zero compliance with ERISA as to this life insurance.  In the absence of competent evidence (Edwards' and Paris' bald statements are incompetent, they were not involved with the company at the time) that Sylacauga Machines intended to create such a plan, these are unsupported allegations.  The admissible evidence is to the contrary: policy 143003 was purchased to fund the stock buy-out.

the Plan "since at least February of 1995", which is the date of the policy's creation. On February 15, 1995, the issuance date, Federated policy 143003 insured Mr. Hall, the business owner.   The beneficiaries were Mrs. Hall, Paris, and Edwards (then named Heidi Hall), none of whom were employees.[15]

Assuming Federated policy 143003 later became an ERISA plan by inclusion of Hurst, an employee[16], was it still an ERISA plan at the time of Mr. Hall's death on August 29, 2004, when the policy was owned by Mr. Hall (who had resigned as an officer and director and  on May 10, 2004), and the beneficiaries were Mrs. Hall, Paris, and Edwards? As alleged by Sylacauga Machine, Mrs. Hall, Paris and Edwards, at the time the "ERISA" benefit became due and payable, the policy was not owned by an employee (or shareholder), the insured was not an employee, and the beneficiaries were not employees; it is hard to see how this could constitute an ERISA benefit.[17]   The evidence is overwhelming to the contrary: no reasonable

---

[15] The policy, when issued, was owned by Sylacauga Machine.

[16] *See Gilbert v. Alta Health & Life Ins. Co*., 276 F.3d 1292, 1302 (11th Cir. 2001), which can be read to say that once a plan has been established by the inclusion of an employee, a [sole] shareholder is a beneficiary within the meaning of ERISA when the shareholder is entitled to benefits from a benefits plan which otherwise qualifies as an ERISA plan.  Hurst was not the owner of Sylacauga Machine.  Hurst had been and  was an employee in 1995,  continuing until she was discharged "for cause" by the Board (controlled by Paris and Edwards) on February 21, 2005, while this litigation was pending.

[17] Presumably Sylacauga Machine would reply that Federated's mismanagement of the Plan is to blame for this being the state of affairs at Mr. Hall's death.  Having said that, both Paris and Edwards say that the policy proceeds should go to their mother, Mrs. Hall.  As previously noted, these claims were made after Sylacauga Machine, Paris, and Edwards became represented by the same counsel..

person could believe, nor can this court find, that Federated policies 143003, 143004, or 200061created an ERISA Plan, or was part of an ERISA Plan.

There is evidence that Sylacauga Machine did have an employee benefits plan. While Edwards' March 31, 2005 affidavit, Exhibit 10 in opposition to summary judgment, contains the conclusory statement "[A]ll of the foregoing insurance was and is provided by Sylacauga Machine Manufacturing, Inc., as a benefit to its employees", the exhibits attached to the Edwards Affidavit show life (and health) insurance premiums for coverage that, so far as the court can tell, are not involved in this action. Specifically, there is life insurance on Mr. Hall and Hurst in the amount of $16,700 each shown in 1994, 1996, and 1997 Federated billing statements to Sylacauga Machine and $16,7000 for Mr. Hall and $11,000 for Hurst in 1998, 2001, and 2002. All of these Federated billing statements show life and medical insurance to other Sylacauga Machine employees (Parker, Davis, Jones). If Mrs. Hall, Paris, or Edwards are saying that these coverages are part, or even all, of an ERISA employee benefit plan, the court would be inclined to agree. That does not advance the inquiry, though. In *Slamen*, *supra*, the Court of Appeals, followed the holding of *Kemp v. IBM Corp.*, 109 F.3d 708 (11th Cir. 1997), that "non-ERISA benefits do not fall within ERISA's reach merely because they are included in a multibenefit plan along with ERISA benefits." 166 F. 3d at 1105. The Federated billing statements on these

health and life insurance benefits do not include billing for, or descriptions of, Federated life policy 143003. The court reads *Slamen* and *Kemp* to require that a putative ERISA benefit be analyzed on its own merits, rather than swept up into another ERISA benefit or plan.  Having done so, the court holds that Federated policies 143003, 143004, and 200061 were not ERISA plans or part of any Sylacauga Machine ERISA plan(s).

In summary, there is no material dispute that both Mr. Hall's and Hurst's lives were insured for years through Federated policies 143003 and 143004, and that the purpose of the insurance was to fund the purchase of the first to die's stock in Sylacauga Machine, leaving the second to die as the controlling shareholder.  Further, neither Paris nor Edwards was an officer or employee of Sylacauga Machine until May 10, 2002.  Mrs. Hall  was never an officer or employee of Sylacauga Machine. None of the other employees (Parker, Davis, Jones) will benefit in any way from the insurance policies in this action.  The Federated policies in this action are not part of an ERISA plan; they were purchased to fund stock buy-outs.  Even Edwards admits this, for she and Paris also executed stock purchase agreements; Edwards simply says her obligation to sell was terminated by agreement between her, Paris, and Sylacauga Machine (with Edwards and Paris voting on behalf of Sylacauga Machine to do so).

For these reasons, even had the Sylacauga Machine amendment/correction to

pleadings been allowed, the evidence filed by the parties, including Sylacauga Machine, Paris, and Edwards, shows that Federated policies 143003, 143004, and 200061 were not an ERISA plan or a part of an ERISA plan.

In summary, the agreements between Paris and Edwards to sell their stock to Sylacauga Machine are valid and enforceable; Hurst is a third party beneficiary thereof; with the stock transfer, Hurst will be the sole shareholder and owner of Sylacauga Machine; the remaining proceeds deposited with the Clerk, i.e., those from Federated policy 143003, are due to be paid to Sylacauga Machine and by Sylacauga Machine in the amounts set forth in the Paris and Edwards stock purchase agreements; the termination for cause of Hurst's employment with Sylacauga Machine is null and void and of no effect; Hurst is entitled to injunctive relief; and Federated is due to be discharged from any and all further liability in connection with the payment of the proceeds of policies 143003 and 200061

A separate Order will issue.

**DONE** and **ORDERED** this the 7th day of November, 2005.

_____

**VIRGINIA EMERSON HOPKINS**
United States District Judge